IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

FRANCES MOKA                                                                                    PLAINTIFF

V.                                              NO. 4:05CV00669 WRW

ARKANSAS DEPARTMENT OF CORRECTIONS;
LARRY NORRIS, Individually and in his Official
Capacity as Director of the Department of Corrections;
MARVIN EVANS, Individually and in his Official Capacity
as the Warden of Tucker Unit; BARBARA MATTHEWS,
Individually and in her Official Capacity as Correction Officer;
ANDREW ROSHELL, Individually and in his Official Capacity as
Correction Officer, RICHARD WEISS, in his Official Capacity as
Director of Arkansas Department of Finance and Administration                 DEFENDANTS

## ORDER

Pending is Defendants' Motion for Summary Judgment (Doc. No. 19). Defendants have also filed a Motion to Strike Plaintiff's Rule 56 Responsive Pleadings and Exhibits (Doc. No. 30). Plaintiff has responded by filing a Motion to Substitute Exhibits (Doc. No. 33).

Plaintiff's claims were filed under Title VII of the Civil Rights Act of 1964,[1] 42 U.S.C. § 1983 ("§ 1983"), 42 U.S.C. § 1981 ("§ 1981"), 42 U.S.C. § 1982 ("§ 1982"), 42 U.S.C. § 1985 ("§ 1985"), and the Equal Protection Clause and Due Process Clause of the Fifth and Fourteenth Amendments of the United States Constitution.  Plaintiff alleges that he was terminated by the Arkansas Department of Corrections ("ADC") because of his race and nationality, and in retaliation for filing an internal grievance complaining of discrimination.

---

[1] 42 U.S.C. § 2000e *et seq*. ("Title VII").

1

In a November 8, 2005 Order, Defendants Roshell and Matthews were dismissed in both their individual and official capacities; Plaintiff's Title VII claims against all Defendants in their individual capacities were dismissed; Plaintiff's EEOC failure to promote claim was dismissed; and Plaintiff's § 1981 punitive damages claim was dismissed.

**I.     History**

Plaintiff, an African-American and native Nigerian, was initially hired by the ADC in 1982, but voluntarily resigned from his employment in 1996 to move to California. Plaintiff was rehired by the ADC on July 21, 1997, and was continually employed as a correctional officer by the ADC until his termination on May 3, 2004. Sometime in 2003, Defendant Barbara Matthews requested Plaintiff's help in procuring an open position on Plaintiff's staff. Plaintiff refused. Plaintiff alleges that Matthews, acting in retaliation, conspired with Defendant Andrew Roshell to seek Plaintiff's termination. Plaintiff had recently disciplined Roshell, and Plaintiff believes that he too had retaliatory motives.

In September 2003, Matthews filed a complaint against Plaintiff alleging sexual harassment. Defendant Roshell submitted a statement verifying the allegation.

While the sexual harassment charge was under investigation, Plaintiff applied for a promotion to Lieutenant. Plaintiff was interviewed for the position on December 23, 2003, by Major Richard Wimberly, Captain Juanita Marks, and Lieutenant David Knott -- all African-Americans.[2] All candidates were rated; Plaintiff was ranked third with a score of 74.148%.[3] Based on the interview committee's findings, Defendant Evans made the decision to give the position to Casey

---

[2] Doc. No. 21.

[3] *Id*.

Marshall, an African-American, who ranked first with a score of 97.118%.[4]  Plaintiff was notified that he did not get the position on January 12, 2004.[5]  Plaintiff filed an internal grievance alleging he was discriminated against on the basis of race and nationality on January 13, 2004.[6]  The Internal Review Committee upheld the decision to hire Marshall on February 2, 2004.[7]  Plaintiff did not appeal that decision.[8]

On February 18, 2004, Defendant Norris approved the Internal Affairs request for a polygraph examination of both Defendant Matthews and Plaintiff as part of the investigation of Matthews's sexual harassment claim against Plaintiff.[9]  Matthews' results were inconclusive,[10] but Plaintiff's exam resulted in a finding that he was being deceptive.[11]  As a result of the internal investigation into Matthews's sexual harassment claim, Defendant Evans fired Plaintiff on May 3, 2004, for violation of the Employee Conduct Standards.[12]

Plaintiff requested and was granted a hearing on his termination before an internal grievance board.[13]  Despite that body's finding to the contrary, Defendant Norris upheld the termination on

---

[4] Doc. No. 21.

[5] *Id.*

[6] *Id.*

[7] *Id.*

[8] *Id.*

[9] *Id.*

[10] Doc. No. 22, Ex. E.

[11] *Id.*

[12] Doc. No. 21.

[13] Doc. No. 21.

June 24, 2004.[14] Plaintiff then appealed Defendant Norris's ruling to a State Grievance Board.[15] Again, despite this body's finding that Plaintiff had suffered wrongful termination and retaliation,[16] Defendant Norris appealed the State Grievance Board's decision to Defendant Weiss.[17] On December 14, 2004, Defendant Weiss upheld Plaintiff's termination.[18]

Plaintiff filed an EEOC Complaint on August 19, 2004, alleging Defendants engaged in a pattern and practice of discrimination and unfair treatment. Plaintiff's alleged injuries include "lack of promotion and wage increases, isolation and ostracism, humiliation, mental suffering and emotional stress and loss of property without the process of law."[19]

**II.   Standard of Review**

Summary judgment is appropriate only when there is no genuine issue of material fact, so that the dispute may be decided on purely legal grounds.[20] The Supreme Court has established guidelines to assist trial courts in determining whether this standard has been met:

> The inquiry performed is the threshold inquiry of determining whether there is the need for a trial -- whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.[21]

---

[14] Doc. No. 22, Ex. G.

[15] Doc. No. 22, Ex. G.

[16] *Id*. at Ex. G-4.

[17] *Id*. at Ex. G-3.

[18] Doc. No. 21.

[19] Doc. No. 1.

[20] *Holloway v. Lockhart*, 813 F.2d 874 (8th Cir. 1987); Fed R. Civ. P. 56.

[21] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

The Court of Appeals for the Eighth Circuit has cautioned that summary judgment is an extreme remedy that should only be granted when the movant has established a right to the judgment beyond controversy.[22] Nevertheless, summary judgment promotes judicial economy by preventing trial when no genuine issue of fact remains.[23] I must view the facts in the light most favorable to the party opposing the motion.[24] The Eighth Circuit has also set out the burden of the parties in connection with a summary judgment motion:

> [T]he burden on the party moving for summary judgment is only to demonstrate, *i.e.*,"[to point] out to the District Court," that the record does not disclose a genuine dispute on a material fact. It is enough for the movant to bring up the fact that the record does not contain such an issue and to identify that part of the record which bears out his assertion. Once this is done, his burden is discharged, and, if the record in fact bears out the claim that no genuine dispute exists on any material fact, it is then the respondent's burden to set forth affirmative evidence, specific facts, showing that there is a genuine dispute on that issue. If the respondent fails to carry that burden, summary judgment should be granted.[25]

Only disputes over facts that may affect the outcome of the suit under governing law will properly preclude the entry of summary judgment.[26]

## III.   Analysis

Plaintiff alleges Defendant Evans terminated his employment and conspired to violate his civil rights because Plaintiff filed a grievance against him. Plaintiff claims Defendant Matthews falsely accused him of sexual harassment, and that Defendant Roshell signed and submitted a false

---

[22]*Inland Oil & Transport Co. v. United States*, 600 F.2d 725, 727 (8th Cir. 1979).

[23]*Id.* at 728.

[24]*Id.* at 727-28.

[25]*Counts v. MK-Ferguson Co.*, 862 F.2d 1338, 1339 (8th Cir. 1988) (*quoting City of Mt. Pleasant v. Associated Elec. Coop.*, 838 F.2d 268, 273-74 (8th Cir. 1988) (citations omitted)).

[26]*Anderson*, 477 U.S. at 248.

5

statement in support of Defendant Matthews's allegations. Plaintiff alleges that Defendant Evans used the sexual harassment complaint as a pretext to terminate his employment. Plaintiff also alleges that Defendants Norris and Weiss violated his civil rights by upholding Defendant Evans's decision to terminate him.

### A. Title VII, § 1981, § 1983

Plaintiff asserts that he suffered race and national origin discrimination and retaliation in violation of Title VII, § 1981, and § 1983. The burdens of proof for claims brought under Title VII, § 1981, and § 1983 are identical.[27] Therefore, this Order will consider the Title VII claims as encompassing the § 1981 and § 1983 claims.

Plaintiff claims that he was treated unfairly and was terminated because of his race and national origin.[28] He also asserts that Defendant retaliated against him for filing a charge of race and national origin discrimination with the EEOC on August 19, 2004. Title VII prohibits retaliation against employees who file charges of discrimination, or who assist others opposing discrimination.[29]

In employment discrimination cases under Title VII, the Supreme Court has long applied the familiar three-step burden shifting framework set out in *McDonnell Douglas Corp. v. Green*.[30]

---

[27] *See Roark v. City of Hazen*, 189 F.3d 758, 761 (8th Cir. 1999); *see also Chambers v. Wynne Sch. Dist.*, 909 F.2d 1214, 1216 (8th Cir. 1990).

[28] Although Plaintiff alleges discrimination based on national origin, he fails to cite to a single incident in which his Nigerian heritage was called into question. Moreover, it is assumed that Plaintiff either abandons his national origin allegations or treats them synonymously with his race discrimination claims because he never discusses national origin specifically. Accordingly, any discussion of race encompasses national origin.

[29] 42 U.S.C. § 2000e-3(a).

[30] *McDonnell Douglas Corp. v. Green*, 41 U.S. 792 (1973).

Under *McDonnell Douglas*, the plaintiff must first establish a *prima facie* case of discrimination. If the plaintiff is able to do this, the burden of production then shifts to the defendant to assert a legitimate, nondiscriminatory reason for the alleged discrimination. If the defendant sets forth such a reason, the burden shifts back to the plaintiff to establish that the asserted reason was a pretext.

To establish a *prima facie* case of retaliation, a plaintiff must show that he engaged in statutorily protected activity, the defendant took adverse action against him, and a connection between the two exists.[31] The defendant may then rebut the plaintiff's case by advancing a legitimate, nonretaliatory reason for the adverse employment action.[32] "If the defendant makes this showing, the plaintiff must show that the defendant's proffered reason was a pretext."[33]

In both discrimination and retaliation cases, Plaintiff must allege the *prima facie* elements and only after those elements are established is Defendant required to rebut them with a legitimate reason for its actions. Plaintiff fails to establish either claim. By Plaintiff's own admission, the officer who received the promotion to Lieutenant over Plaintiff, Casey Marshall, is an African-American.[34] Defendant Evans, the warden who made the decision to award the position to someone other than Plaintiff, is an African-American.[35] The individuals who conducted the interviews for the position were all African-American.[36] Mr. Marshall ranked first in the evaluations and Plaintiff

---

[31] *Montandon v. Farmland Industries, Inc.*, 116 F.3d 355 (8th Cir. 1997).

[32] *Shanklin v. Fitzgerald*, 379 F.3d 596, 603-604 (8th Cir. 2005).

[33] *Id*.

[34] Doc. No.22, Ex. A, p. 56.

[35] *Id*. at 57.

[36] *Id.* at 58.

ranked third.[37]  Importantly, during his employment, Plaintiff was promoted in rank to Sergeant.[38] It is further undisputed that in the 18 years that Plaintiff worked for the ADC, he never complained of discrimination until after his investigation for sexual harassment began.  Although Plaintiff voluntarily resigned for a period, when he returned to Arkansas, he sought and was given a job with the ADC.  The fact that Plaintiff applied for and was given his job back belies his allegation of discrimination.

Defendants allege that Plaintiff filed the grievance on January 13, 2004, because he knew that he was being investigated for sexual harassment.  The Eighth Circuit has held that "complaining of discrimination in response to a charge of workplace misconduct is an abuse of the anti-retaliation remedy."[39]  In a separate case, the Eighth Circuit later held that "filing an EEOC complaint does 'not insulate an employee from discipline for disrupting the workplace.'"[40]

It seems to me that the reasoning of the Eleventh Circuit in *Elrod v. Sears, Roebuck & Co.*[41] is sound.  It held that an employer can properly discipline an employee who is guilty of sexual harassment because, if it did nothing, it would run the risk of being liable to those employees who had been harassed.  If an employer fires an employee because it honestly, but mistakenly, believes that the employee violated a company policy, the discharge is not racially based.

---

[37]*Id.* at 57.

[38]Doc. 22 at 15.

[39]*Griffith v. City of Des Moines*, 387 F.3d 733, 738 (8th Cir. 2004).

[40]*Wallace v. Sparks Health System*, 415 F.3d 853 (8th Cir. 2005) (*quoting Kiel v. Select Artificials, Inc.*, 169 F.3d 1131, 1136 (8th Cir. 1999)).

[41]*Elrod v. Sears, Roebuck & Co.*, 939 F.2d 1466 (11th Cir. 1991).

In the present matter, Defendants did not decide to terminate Plaintiff lightly. Plaintiff was fired only after a lengthy investigation revealed that Plaintiff could produce no eye-witness testimony to counter Matthews's,[42] he failed his polygraph exam,[43] and he lied during the in-house investigation.[44]

In his pleadings, Plaintiff attempts to discredit the investigation and the sexual harassment charge. His attempts fail because whether or not Plaintiff engaged in such conduct is not the question. The question is whether Defendants believed he engaged in that conduct and disciplined him accordingly - - regardless of his race.[45] Defendants argue that if employers were required to prove that sexual harassment actually occurred in order to defend a discriminatory discharge claim, and rebut a charge of pretext, then every discrimination case would quickly dissolve into a trial of the underlying sexual harassment claims. Moreover, federal courts "do not sit as a super-personnel department that reexamines an entity's business decisions. . . .[The] inquiry is limited to whether the employer gave an honest explanation of its behavior."[46]

Defendants next argue that Plaintiff failed to establish any connection between the internal grievance he filed in January and his termination five months later as required by the third element

---

[42]Doc. No. 22, Ex. C.

[43]Doc. No. 22, Ex. E.

[44]Doc. No. 22, Ex. C

[45]*Sherrod v. AIG Health Management Services, Inc.*, 2000 WL 140746 (N.D. Tex. 2000) ("Title VII does not guarantee plaintiffs that they may only be terminated after a completely thorough, accurate, and fair investigation into the circumstances around a termination."); *See also Hawkins v. Ceco Corp*., 883 F.2d 977, 980 n.2 (11th Cir. 1989), *cert. den*., 495 U.S. 935 (1990) (that the employee did not in fact engage in misconduct reported to the employer is not the point -- the question is whether the employer believed the employee had done wrong).

[46]*Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995).

of the *prima facie* case. They are correct. The Eighth Circuit has held that a "time interval of more than two months is too long to support the third element of a *prima facie* case" of retaliation.[47] While each case turns on its own facts, if two months is too long to establish a causal connection, then five months is too long in similar circumstances.

**B.     Section 1982**

Chapter 42 U.S.C. § 1982 prohibits racial discrimination in connection with the inheritance, purchase, lease, sale, holding, and conveyance of real and personal property. In order to make out a *prima facie* case under § 1982, plaintiffs must show that (1) they are members of a racial minority; (2) defendants denied plaintiff's rights or benefits in connection with the ownership of property; and (3) defendants would not have denied such rights in the absence of intentional racial discrimination.[48]     Section 1982 does not apply to employment discrimination claims.[49] Because Plaintiff was an at-will employee and cannot show a property interest in his job, no § 1982 claim exists.

**C.     Section 1985**

To prove a conspiracy existed under § 1985, Plaintiff must show that there was an agreement between the alleged conspirators to deprive him of his civil rights.[50] The threshold to prove a claim

---

[47] *Trammel v. Simmons First Bank of Searcy*, 345 F.3d 611 (8th Cir. 2003).

[48] *Fakorzi v. Dillard's, Inc.*, 252 F. Supp. 2d 819, 837 (S.D. Iowa 2003).

[49] *Skeets v. Johnson*, 816 F.2d 1213 (8th Cir. 1997); *see also Ohlman v. Harris Trust & Sav. Bank*, 1996 WL 648728 (N.D. Ill. 1996) ("The courts have repeatedly held that 42 U.S.C. § 1982 does not support a claim of retaliatory discharge because § 1982 does not protect the kind of property interest that a person has in her job.").

[50] *Jenson v. Henderson*, 315 F.3d 854, 862-63 (8th Cir. 2002).

under §1985 is very high.[51] Plaintiff must show evidence of "purposeful discrimination" to establish such a claim.[52] Defendants argue that Plaintiff's § 1985 allegations should be dismissed because he has produced no evidence of a conspiracy or any agreement among the defendants to deprive him of a constitutional right. Plaintiff has not put forth sufficient evidence from which a jury could find that Defendants entered into an illicit agreement, or that Defendants' behavior was purposefully discriminatory. Plaintiff's evidence is nothing more than his conclusory allegations that Defendants conspired to deprive him of his rights on the basis of race and nationality. Conclusory allegations alone are not sufficient to state a claim under § 1985.[53] Moreover, a conspiracy requires at least two persons. Because a government entity and its agents are a single person in the eyes of the law, it cannot conspire with itself.[54] Accordingly, Plaintiff's § 1985 claims fail as a matter of law.

### D.     Constitutional Allegations

Plaintiff alleges federal civil rights violations - - namely, violations of due process and equal protection guaranteed by the Constitution and § 1981, § 1982, § 1983, and §1985. Plaintiff's allegations fail to trigger any Due Process Clause or Equal Protection Clause protections as a matter of law. The Fourteenth Amendment to the United States Constitution provides that a State shall not deprive any person of life, liberty, or property, without due process of law. Because it has already

---

[51]*Id.*

[52]*Id.*

[53]*Jeseritz v. Potter*, 282 F.3d 542, 546-47 (8th Cir. 2002) (unsubstantiated conclusory allegations insufficient to show pretext).

[54]*McEvoy v. Spencer*, 49 F. Supp. 2d 224, 226 (S.D.N.Y. 1999) (*citing Sharpe v. Long*, 842 F. Supp. 197, 201 (D.S.C.1992) ("Officials of a single government entity, acting in their official capacities cannot conspire among themselves or with the entity within the meaning of § 1985.")).

been determined that Plaintiff failed to prove a violation under any of his causes of action, Plaintiff's constitutional claims also fail as a matter of law.[55]

**IV.   Conclusion**

For the foregoing reasons, Defendants' Motion for Summary Judgment is GRANTED. Defendants' Motion to Strike Plaintiff's Rule 56 Responsive Pleadings and Exhibits is DENIED. Likewise, Plaintiff's Motion to Substitute Exhibits is GRANTED.

IT IS SO ORDERED this 27th day of March, 2006.

                                      /s/ Wm. R.Wilson,Jr.
                                   UNITED STATES DISTRICT JUDGE

---

[55]*Valadez v. Graham*, 474 F. Supp. 149 (D.C. Fla. 1979) (Since court ruled that there had been no violations of federal law or constitutional principles, claims of civil rights violations based on the same constitutional and statutory provisions must fail as a matter of law.); *see also Mosby v. Mabry*, 697 F.2d 213, 215 (8th Cir. 1982).